UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BRANDON MATTHEW ALWELL #595251     CIVIL ACTION NO. 20-cv-465 SEC P

VERSUS     JUDGE FOOTE

JAMES M LEBLANC, ET AL     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Brandon Matthew Alwell ("Plaintiff") is a self-represented inmate at the David Wade Correctional Center ("DWCC"). He filed a prison grievance that complained that Sgt. Calantez Frazier and other unnamed staff refused to provide him hydrocortisone cream, used to treat eczema, on November 22, 2019. After the grievance was denied, Plaintiff filed this civil action against Frazier as well as 15 other defendants about multiple alleged denials of medical care and other instances of mistreatment that took place between November 19, 2019 and March 2020.

Before the court is Plaintiff's Motion for Partial Summary Judgment (Doc. 107) in which he seeks a finding that the several defendants are liable to him for denial of adequate medical care between November 2019 and June 2020. Defendants opposed the motion and have filed their own Motion for Summary Judgment (Doc. 111) in which they argue that (1) Plaintiff did not exhaust his administrative remedies with respect to most of his claims and (2) Defendants are entitled to summary judgment based on the merits and qualified

immunity. For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Exhaustion of Administrative Remedies**

    **A. The Exhaustion Requirement**

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege the use of excessive force or denial of medical care. Porter v. Nussle, 122 S.Ct. 983 (2002). The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

The level of detail required in a grievance is based on the prison's requirements, and not that of the federal statute. Jones v. Bock, 127 S.Ct. 910, 923 (2007). The grievance procedure for Louisiana state prisoners is set forth in Louisiana Administrative Code, Title 22, Part I, § 325. It allows an offender to seek review "of a complaint which relates to any aspect of his incarceration" if informal methods do not resolve the issue. An inmate commences the administrative process by writing a letter to the warden in which he "briefly sets out the basis for his claim, and the relief sought." Some prisoners use a preprinted form provided by the prison that ask the prisoner to, "Describe Nature of Complaint (i.e. WHO, WHAT, WHEN, WHERE, and HOW)".

### B. Plaintiff's Grievance

Plaintiff filed his grievance as a handwritten letter or petition, which the rules permit. He complained in his grievance of a specific violation of Offender Posted Policy #031, Access to Health Care and Clinical Services, in which DWCC sets forth rules and guidelines for sick call procedures, pill call procedures, and dental and eye care. The pill call procedures for cell blocks state that prescription medications will be delivered by pill call officers or nursing staff at appropriate times. The staff will dispense the medication in a pill cup, observe the offender swallow the medication, and record the administration on the designated Medication Administration Record (MAR) or the electronic version known as EMAR.

The policy allows that offenders may possess some liquids and creams when authorized by the medical department, but several of the defendants offer declarations pursuant to 28 U.S.C. § 1746 that Plaintiff was housed in Unit N-2 on November 22, 2019, and it is a restrictive security housing unit where he would not have been able to keep medication on his person. Paula Millwee, a registered nurse at DWCC, states in her declaration that offenders are instructed to ask for prescribed creams because they are located on the pill cart, but in a drawer that is separate from the pills. If a medication is requested or dispensed during pill call time, it is recorded in the EMAR.

Plaintiff's grievance stated that it was being filed under posted policy #031 and the policy for pill call procedures. He complained as follows:

> Offender posted policy #031, was violated by DWCC Staff, Sgt. Frazier and the pill cart officer on November 22, 2019. Access to my medicine to maintain basic health was impeded. My prescription hydrocortisone cream

> was not provided in a timely and efficient manner. The bucket that contains the creams, solutions, etc. was not on the pill cart. Sgt. Frazier refused to get my cream out of the key when I asked him.

Plaintiff's grievance went on to complain that he had never seen the "bucket that contains the creams" on the cart at pill call times, and the bucket stayed in the key room area. The grievance continued:

> On November 22, 2019, my prescribed hydrocortisone cream was not on the pill cart at the appropriate or designated times. The pill cart officer never made a record on the designated "EMAR" or "MAR," which substantiates my complaint.

For a remedy, Plaintiff asked that $800 be taken from the DWCC medical department budget and be deposited into his account so that he could spend it on canteen products and educational opportunities. He also asked that pill call procedures be followed to allow unimpeded access to medical services.

Unit Head Angie Huff issued a written step one response regarding Plaintiff's "complaint against Sgt. C. Frazier and the pill call procedures in place for cellblock offenders." She considered a written statement from Sgt. Frazier, who said he had no knowledge of the allegations and had never denied any offender his medication or witnessed any medical staff refuse an offender medication. Huff added an explanation about the availability of hydrocortisone cream, Plaintiff's ability to discuss the matter with medical staff, and stated that Plaintiff's cream "was available until 11/29/19 when your prescription ended." The step two response from DOC Headquarters referred to the first step response and said that nothing could be added to make the issue any clearer.

### C. Plaintiff's Judicial Complaint

Plaintiff then filed his judicial complaint, as well as an amended complaint. They included allegations beyond what happened on November 22, 2019 and addressed many events that allegedly took place between November 2019 and March 2020. Plaintiff alleged that he suffered from eczema and had been repeatedly denied creams and ointments to treat the eczema and related infections. He also complained extensively about the alleged denial of Carmex for chapped lips.

Plaintiff's complaint made specific allegations about several DWCC staffers, although neither the incidents nor the staffers were mentioned in the administrative grievance about the November 22, 2019 denial of skin cream. For example, he alleged that Sgt. Damarcus Warren refused to keep Plaintiff's medications on the pill cart or get it from the key room, and Warren would laugh at him and walk off when Plaintiff told him that his medication should be on the cart. Plaintiff alleged that he showed Sgt. Corey Reed a letter from medical staff that said his medication should be on the cart, and Reed allegedly responded, "Fuck medical," and threatened Plaintiff that he would be dealt with if he filed any more paperwork.

Plaintiff complained that not only Sgt. Frazier, but also Sgts. Coleman, Glass, and Moore refused to get his medication from the key room on multiple occasions. He alleged that Coleman threatened to give him a black eye if he filed more paperwork. Plaintiff alleged that Sgt. Moore told him that he would get his medications if he gave up his shower. Other officers allegedly tried to get Plaintiff to "sell" his shower or monthly phone call in

exchange for his medications, because the officers did not want to have to shackle Plaintiff for those events. Lt. Hill allegedly forced Plaintiff to make a choice on February 24, 2020.

Sgt. Reed allegedly refused to get medication from the key room on February 8, 2020 and told Plaintiff to stop crying like a baby. Plaintiff claims that he wrote to Paula Millwee, the director of nursing, many times with complaints and questions about his medications, but she never investigated. He does allow that Millwee responded multiple times that his medications should have been on the cart. He also complains that she allowed him to be charged for sick calls in which he did not receive medical care for his chapped lips and eczema. Col. Mays is accused of threatening Plaintiff that, if he kept writing complaints, he would be placed in a one-person cell in the worst unit with no privileges. Plaintiff's complaint also included mention of his attempts to seek mental health services in March 2020.

**D. Exhaustion Analysis**

Exhaustion is an affirmative defense, so the burden is on Defendants to demonstrate that Plaintiff failed to exhaust properly available administrative remedies. Jones v. Bock, 127 S.Ct. 910 (2007). That requires them to establish all of the essential elements of the defense to warrant summary judgment in their favor. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). Defendants argue that Plaintiff did not properly exhaust his claims except for the charge that he was denied his medication on November 22, 2019. The Defendants present in support the administrative grievance record, and they note the allegations in Plaintiff's judicial complaint that go beyond the scope of the grievance

Plaintiff did not name any particular officers in his grievance other than Sgt. Frazier, but "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones, 127 S.Ct. at 923. But if a claim presented in a lawsuit is unexhausted, the court should dismiss the unexhausted claim and proceed only with the properly exhausted claims. Id. at 923-26. That presents the issue of which claims against which defendant(s) were properly exhausted by Plaintiff's grievance.

The Fifth Circuit in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) held that a grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. at 522. The Court has continued to apply Johnson's "fair opportunity" standard after Jones v. Bock. See Zebrowski v. U.S. Fed. Bureau of Prisons, 558 Fed. Appx 355, 360 (5th Cir. 2014); Garcia-Comacho v. Maldonado, 243 Fed. Appx. 880 (5th Cir. 2007).

In Johnson, the Texas administrative requirements directed inmates to write briefly and clearly to provide specific information and facts about their grievance. A black homosexual prisoner complained that prison officials failed to protect him from repeated sexual assault. He presented administrative grievances and then filed suit against several defendants and on a number of theories. Some of his claims were deemed to have been satisfactorily exhausted, but his claim of race discrimination was not. His grievances nowhere stated that he was suffering racial discrimination and did not mention his race at all. The Fifth Circuit held that his grievances did not adequately alert prison officials to a race-related problem and allow them an opportunity to address it. The race discrimination claim was, therefore, dismissed. Johnson, 385 F.3d at 518.

Exhaustion was also lacking in <u>Zebrowski</u>, 558 Fed. Appx. at 360, where the grievance made vague references to "an act of cahoots of retaliation" but did not raise the retaliation claim that the prisoner raised in his judicial complaint. The Fifth Circuit concluded that the grievance did not give prison officials a fair opportunity to address the claim in the lawsuit, so the district court's dismissal of the claim was affirmed. The Court also stated that it was irrelevant that the prisoner included his retaliation claim in a letter to a senator; the prisoner was required to exhaust his administrative remedies through the official administrative grievance procedure.

Plaintiff's grievance was specific that it was regarding the lack of hydrocortisone cream on November 22, 2019. The only particular defendant named was Sgt. Frazier, although the grievance did refer to an unnamed pill cart officer and made a generic reference to DWCC staff who allegedly violated policy that day. Nothing in Plaintiff's grievance made allegations about denial of medication on any other date, alleged the denial of any medication other than hydrocortisone cream (there is no reference to Carmex or an antibiotic as in the complaint), and did not make any reference to claims of retaliation, threats, and intimidation that Plaintiff alleges in his lawsuit took place over the course of several weeks.

When an inmate is allegedly subjected to various distinct events or deprivations, he must satisfy the PLRA's exhaustion requirement with respect to each event. <u>Johnson</u>, 385 F.3d at 521 n.13 ("Thus, an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents."). The Fifth Circuit allowed that an inmate who is

subjected to, for example, constant threats and harassments from other prisoners is not expected to file a new grievance each time he is assaulted, and he may exhaust by filing a grievance about a general lack of protection. Johnson, 385 F.3d at 520-21. But the Court noted, "[W]e do not here hold that a grievance filed in response to one particular incident automatically exhausts claims that arise from future incidents of the same general type." Johnson, 385 F.3d at 521 n.13.

Plaintiff could have filed a grievance that made a broad complaint about a lack of skin cream and other medications over the course of several weeks. But that is not what he did. Rather, he filed a grievance that focused specifically on the denial of cream by a particular officer on a particular date. Quite reasonably, the prison staff responded by seeking information from that officer and addressing the availability of the medication on that date. Thus, the grievance afforded DWCC officials a fair opportunity to address the availability of hydrocortisone cream on November 22, 2019, but it did not afford the administration a fair opportunity to address the several other claims alleged in the complaint, ranging from retaliation to mental healthcare. Plaintiff has exhausted only his claim that he was denied hydrocortisone cream on November 22, 2019. All other claims should be dismissed without prejudice for failure to exhaust administrative remedies. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019) (failure to exhaust warrants dismissal without prejudice).

**Denial of Medication on November 22, 2019**

    **A. Relevant Summary Judgment Evidence**

Plaintiff supported his motion for partial summary judgment with declarations from himself and a fellow inmate. Plaintiff stated, under penalty of perjury pursuant to Section 1746, that he was denied adequate medical care for his eczema between November 2019 and June 2020. He said this was because of security staff's interference with prescribed treatment and the pill call policy being violated by pill call staff. He said he requested his medication from numerous tier officers and pill call staff, but he "was refused many times over the course of several months." This resulted in severe burning and itching, as well as an infection called folliculitis.

LaMario Laws stated in a declaration that he was housed with Plaintiff from December 2019 to April 2020 (which is *after* the November 22, 2019 date at issue). Laws stated that Plaintiff's eczema on his hands and legs that got worse over time. He stated that Plaintiff's medications were provided to him "on random occasions" that caused Plaintiff to go without medication for days at a time. The medications were allegedly never on the pill cart, and when Plaintiff asked officers to look in the key room for his medication, Sgt. Warren would laugh at him. Laws stated that Plaintiff's eczema was "very red, and it would swell up on a regular." He said Plaintiff told him it felt like a burning sensation or as if insects were biting his skin.

Nurse Millwee explained in her declaration that creams are located in a drawer on the pill cart, and offenders are instructed to ask for the creams. Plaintiff's medical records indicate that he was prescribed hydrocortisone cream from November 15, 2019 through

November 29, 2019, and again January 25, 2020 through February 23, 2020.  Millwee said that the cream is prescribed for a short term due to adverse side effects of prolonged use.  Plaintiff's EMARs indicate that he did not request his hydrocortisone creams on the days that they were available to him.

Sgt. Frazier, against whom the grievance was directed, stated in his declaration that he recalls Plaintiff requesting his medication on November 22, 2019.  Frazier replied that he was performing job duties then but would provide the medication when finished.  Less than ten minutes later, Frazier provided the medication to Plaintiff.  Frazier stated that he does not recall Plaintiff requesting his medication on other dates, but if he did, Frazier would check the key room for the medication and deliver it if it were available.  Frazier added that he is not a pill cart officer, so he does not have the keys to unlock the locked pill cart.

Several of the other defendants provided similar declarations in which they deny Plaintiff's various allegations against them.  Sgt. Corey Reed stated that he was a pill call officer during November 2019 and the months that followed.  He stated that he provided medication to Plaintiff on November 20, 21, 25, 26, and 30 of 2019.  On those dates, Plaintiff was prescribed Cortisone-10, but he did not request it.  Reed also described the administration of various medications to Plaintiff in the months that followed, and he said that he did not deny Plaintiff any medication that was prescribed to him.  Reed stated that he entered the lack of request on the EMAR, a copy of which is in the exhibits at Doc. 110, Ex. 2, pp. 68-69.

Dr. Jeffrey Fuller submitted a declaration and stated that he conducted an examination of Plaintiff on December 30, 2019. He saw healing lesions on Plaintiff's upper back and scattered lesions that appeared almost healed on Plaintiff's left lower extremity. He noted that Plaintiff had a history of eczema, but he did not believe that the lesions on his back required continued treatment because they appeared almost healed. He prescribed triamcinolone (a steroid cream) to treat the condition of Plaintiff's lower leg.

### B. Eighth Amendment; Serious Medical Need

For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Deliberate indifference may be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment. Estelle, 97 S.Ct. at 291.

Several courts have held that eczema or other skin rashes are not a serious medical need that rises to the level of an Eighth Amendment violation if not properly treated. See Tasby v. Cain, 86 Fed. Appx. 745 (5th Cir. 2004) (the development of a rash as a result of being placed in restraints does not establish that the inmate suffered "serious harm"); Riddick v. Modeny, 250 Fed. Appx. 482 (3rd Cir. 2007) (failure to provide medications prescribed for eczema did not demonstrate deliberate indifference to a serious medical need); Tsakonas v. Cicchi, 308 Fed. Appx. 628, 632 (3rd Cir. 2009) (denial of treatment

for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" failed to allege a serious medical condition); Sledge v. Kooi, 564 F.3d 105 (2nd Cir. 2009) (eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need"); Hunt v. Carver, 2020 WL 9348170, *16 (S.D. W.Va. 2020) (medical need was not serious when inmate complained of dry red spots that were burning and increasing in size on knees, hands, legs, and elbows); Gonzales-Reyna v. Ellis 2009 WL 2421482, * 3 (E.D. Va. 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."); and Samuels v. Jackson, 1999 WL 92617, *1-3 (S.D. 1999) (prisoner's claim of intense itching from eczema did not constitute a "serious medical need"). In Hunt, 2020 WL 9348170, *16, the court cited these and several other district court decisions that have reached similar conclusions.

### C. Summary Judgment Analysis

This case is before the court on motions for summary judgment by both Plaintiff and Defendants. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). For Plaintiff to prevail on his motion, he must present evidence

that would entitle him to judgment as a matter of law if it went uncontroverted at trial. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991).

Plaintiff has not demonstrated that he is entitled to summary judgment with respect to liability, but Defendants have shown that they are entitled to summary judgment dismissing the claims against them with respect to the alleged denial of medication on November 22, 2019. The evidence most favorable to Plaintiff indicates that he suffers from eczema that manifested as a rash that itched or caused a stinging sensation. Dr. Fuller's testimony shows that, about a month after the alleged denial, Plaintiff's back was healing well, and he was prescribed a topical corticosteroid to treat the condition on his leg. Even if Plaintiff could create a genuine issue as to whether Sgt. Frazier refused to give him his medication on November 22, 2019, Frazier and the other defendants are entitled to summary judgment because Plaintiff has not shown that he suffered from a serious medical need within the meaning of Eighth Amendment jurisprudence. Furthermore, the denial of skin cream to treat eczema for one day is not deliberate indifference; it would not constitute the unnecessary and wanton infliction of pain repugnant to the conscience of mankind.

Accordingly,

It is recommended that Plaintiff's motion for Partial Summary Judgment (Doc. 107) be denied and that Defendants' Motion for Summary Judgment (Doc. 111) be granted by dismissing without prejudice all claims other than those based on the denial of medication on November 22, 2019 and dismissing with prejudice the claims based on the denial of medication on November 22, 2019.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of May, 2021.

Mark L. Hornsby
U.S. Magistrate Judge